**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Adam J. Crawford,<br><br>   Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>   Defendant. | No. CV-20-02112-PHX-JJT<br><br>**ORDER** |

  At issue is the denial of Plaintiff's Application for Title II Disability Insurance Benefits by Defendant. Plaintiff filed a Complaint (Doc. 1) seeking judicial review of that denial, and the Court now considers Plaintiff's Opening Brief (Doc. 21, "Pl. Br."), Defendant's Response Brief (Doc. 27, "Def. Br."), and Plaintiff's Reply Brief (Doc. 31). Because the Court finds the decision free of legal error and supported by substantial evidence in the record, it will affirm the decision.

**I. BACKGROUND**

  Plaintiff, Adam J. Crawford, alleges he became disabled in May 2016 due to neck pain, back pain, heart problems, and migraine headaches. (Pl. Br. at 2-8.) Due to his chronic back pain, Plaintiff had difficulty working. (Pl. Br. at 3.) Eventually, the pain became so severe that Plaintiff quit his job at Wells Fargo. (Pl. Br. at 3.) His last day working was May 31, 2015. (Pl. Br. at 3.)

  On October 25, and November 19, 2016 "[Plaintiff] underwent bilateral L2, L3, L4, and L5 medial branch blocks associated with the diagnoses of lumbago and lumbar

spondylosis." (Pl. Br. at 4.) He also underwent "trigger point injections in the lower thoracic and lumbar spine." (Pl. Br. at 4.) Later, to address his continued pain, he underwent "a second bilateral L2, L3, L4, and L5 medial branch radiofrequency neurotomy under fluoroscopic guidance." (Pl. Br. at 4.) In 2016, Plaintiff also began physical and aquatic therapy. (Pl. Br. at 4.) According to Plaintiff, he "demonstrated poor tolerance for activities" and the therapist also noted "functional limitations including severe difficulty with all upright activity, such as standing, sitting, and walking." (Pl. Br. at 4 (internal citation omitted).) Plaintiff claims he "experienced some improvement with aquatic therapy, but other exercises caused increased pain." (Pl. Br. at 4). Overall, "the therapist concluded that he achieved minimal functional improvement." (Pl. Br. at 4.)

In 2017, Plaintiff continued to seek treatment for his pain. On February 22, 2017, he underwent another "bilateral L2, L3, L4, and L5 medial branch radiofrequency neurotomy and medial branch blocks under fluoroscopic guidance." (Pl. Br. at 4.) A Physical Residual Function Capacity Assessment completed June 20, 2017, by Bradley Weiner, M.D. ("Dr. Weiner") diagnosed Plaintiff "with recurrent lumbar disc herniation." (Pl. Br. at 4.) On November 16, 2017, Plaintiff was in a car accident that exacerbated his ongoing pain and symptoms. (Pl. Br. at 3.) During his hospital admission after the accident, Plaintiff claims CT scans of his spine confirmed degenerative changes throughout his spine. (Pl. Br. at 3.) Plaintiff then returned to the ER on November 19 and 22, 2017 with complaints of leg pain, back pain, and numbness in both hands and fingers. (Pl. Br. at 3.) According to the Plaintiff, he was diagnosed with "acute whiplash syndrome, acute thoracic strain, lumbar strain, acute sciatic pain exacerbated by the motor vehicle accident" and "[h]e was instructed to follow up with pain management and referred to neurosurgery and physical therapy, along with continuing his current medications." (Pl. Br. at 3.)

After two denials and an administrative hearing, the Administrative Law Judge ("ALJ") issued a decision on February 5, 2020, finding Plaintiff not disabled. (Def. Br. at 2.) The Appeals Council subsequently denied review, making the ALJ's decision final. (Def. Br. at 2.) *See* 20 C.F.R. § 422.210(a).

The issues presented to this Court for review are: (1) whether the ALJ provided adequate reasons for discounting Plaintiff's symptom testimony; (2) whether the ALJ's evaluation of the opinion evidence is supported by substantial evidence; and (3) whether the ALJ reasonably evaluated third-party statements from Plaintiff's parents. This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g).

## II.    LEGAL STANDARD

In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, but less than a preponderance; it is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* To determine whether substantial evidence supports a decision, the court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* As a general rule, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled, and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). If not, the claimant is not disabled, and the inquiry ends. *Id.* At step three, the ALJ considers whether

the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ proceeds to step four. *Id.* At step four, the ALJ assesses the claimant's RFC and determines whether the claimant is still capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If so, the claimant is not disabled, and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where she determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.* If not, the claimant is disabled. *Id.*

**III.  ANALYSIS**

The Court begins its analysis with Plaintiff's symptom testimony, then moves to the opinion evidence, and finally the third-party statements.

**A.   The ALJ Did Not Err in Rejecting Plaintiff's Symptom and Pain Testimony.**

In evaluating a claimant's pain and symptom testimony, the ALJ must engage in a two-step analysis. First, she must determine whether the claimant has produced objective medical evidence of an underlying impairment. Second, unless there is evidence that the claimant is malingering, the ALJ must provide specific, clear, and convincing reasons for rejecting pain and symptom testimony associated with the underlying impairment. *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). Here, because the ALJ found underlying impairments of morbid obesity; migraine headaches; cervical, thoracic, and lumbar degenerative disc disease; paroxysmal supraventricular tachycardia; postural orthostatic tachycardia syndrome (POTS); and depression, anxiety, and adjustment disorder, she must provide specific, clear, and convincing reasons to reject Plaintiff's pain and symptom testimony. (Pl. Br. at 9.)

"An ALJ [is not] required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C.

§ 423(d)(5)(A)." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). General findings pertaining to a claimant's credibility, however, are not sufficient. *See Lester v. Chater*, 81 F.3d 821 (9th Cir. 2005). Rather, "the ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001). In doing so, the ALJ need not engage in "extensive" analysis, but should, at the very least "provide some reasoning in order for [a reviewing court] to meaningfully determine whether [her] conclusions were supported by substantial evidence." *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015). Moreover, if the ALJ explains her decision "with less than ideal clarity, a reviewing court will not upset the decision on that account if [her] path may reasonably be discerned." *Alaska Dept. of Envtl. Conservation v. E.P.A.*, 540 U.S. 461, 497 (2004); *see Brown-Hunter*, 806 F.3d at 492 (applying this rule to the social security context). The ALJ may consider "[the claimant's] reputation for truthfulness, inconsistencies either in his testimony or between his testimony and his conduct, his daily activities, his work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains." *Light v. Soc. Sec. Admin., Comm'r*, 119 F.3d 789, 792 (9th Cir. 1997).

Here, the ALJ rejected Plaintiff's statements as "not entirely consistent with the medical evidence and other evidence in the record." (Doc. 14, R. at 19.) In support of this conclusion, the ALJ makes numerous references to specific evidence in the record, including objective medical evidence, and notes statements made by Plaintiff.

The disability alleged was due to "degenerative disc disease, facet joint disease, bradycardia, repeating arrhythmia, hyper-intense hemangioma, herniated discs, moderate foraminal narrowing, osteophyte complex, and facet hypertrophy." (R. at 18.) Plaintiff also alleged he "was unable to sit, stand, or walk without immediate and severe pain. He has daily migraines" and, due to pain, "he is unable to focus or concentrate." (R. at 18.) The ALJ noted how Plaintiff's "own description of his activities of daily living are not nearly as limited as one would expect given his complaints of disabling symptoms and

limitations." (R. at 21.) For example, the ALJ noted how Plaintiff was "able to care for himself, watch movies, perform household chores, attend religious services regularly, drive, use public transportation, and care for his two young children." (R. at 21.) Further, "[p]rogress notes indicate[d] [Plaintiff] swims in the pool 2-3 times per week," "walks as a means of exercise," and, "[a]s of 2018, [Plaintiff] and his family were living in an RV and traveling around the country." (R. at 21.)

The ALJ also explained how evidence in the record failed to corroborate Plaintiff's allegations and testimony of work preclusive symptoms and limitations. For example, Plaintiff complained of daily migraines, but "migraine headaches were improved with medication." (R. at 20.) Specifically, with medication, Plaintiff's headaches only occurred "1-2 times per week and lasted less than a day." (R. at 20.) Additionally, Plaintiff "testified he spends the majority of time lying down or reclining in his wheelchair." (R. at 21.) He also claimed he was "unable to attend physical therapy because he could not ride in a vehicle." (R. at 21.) As the ALJ notes, this is in sharp contrast to the fact that Plaintiff has ridden, and driven, in an RV all across the country. Further raising doubts of Plaintiffs truthfulness, in July 2019, Plaintiff informed a provider that "he only used his wheelchair for doctor's appointments." (R. at 21.)

The ALJ also cites Plaintiff's 2017 Lumbar MRI, 2019 Lumbar MRI, Thoracic MRI and Brain MRI which showed "no evidence of significant nerve root impingement, severe stenosis, progressive neurologic deficits, infections, tumors, or fractures to cause the severity of pain and limitations alleged." (R. at 19.) The 2017 MRI showed "of status post left L5-S1 laminectomy, left paracentral neural foraminal disc protrusion with mild flattening of the thecal sac and mild dorsal displacement of the left S1 nerve root sleeve." (R. at 19.) The 2019 MRI "revealed post-operative changes at L5-S1, possible recurrent disc protrusion, narrowing of the left lateral recess and displacement of traversing left S1 nerve root." (R. at 19.) The Thoracic MRI taken at the same time "showed of mild multilevel spondylosis without any significant spinal canal or neural foraminal stenosis." (R. at 19.) Lastly, Plaintiff's brain MRI was "unremarkable." (R. at 19.)

The Court finds that the above evidence cited by the ALJ does undermine the statements made by Plaintiff and the above reasons are sufficiently specific, clear and convincing, and supported by substantial evidence in the record. Therefore, the ALJ did not commit legal error in rejecting Plaintiff's pain and symptom testimony.

### B. The ALJ Did Not Err in Assigning Less Weight to the Opinions of Dr. Zoeteman and Mr. Goldstein.

"In conjunction with the relevant regulations, [the Ninth Circuit] has … developed standards that guide [the] analysis of an ALJ's weighing of medical evidence." *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). The ALJ is obligated to evaluate every medical opinion in the record. 20 C.F.R. § 404.1527(c). The general rule is that the greatest evidentiary weight is given to the opinion of a treating physician; lesser weight is given to that of a non-treating, examining physician; and the opinion of a non-treating, non-examining physician is given the least weight, relatively. *See Garrison*, 759 F.3d at 1012; *see also* 20 C.F.R. § 1527(c)(1). Treating physicians are given this deference because they are "employed to cure and [have] a greater opportunity to know and observe the patient as an individual." *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987); *see also* 20 C.F.R. § 404.1527(c)(2) (stating that treating sources "may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone"). Relevant factors for the ALJ to consider in assigning weight to the opinion include the length of the treatment relationship, frequency of examination, nature and extent of the treatment relationship, the extent the opinion is supported by medical signs and laboratory findings, consistency with the record as a whole, the specialization of the physician, and "other factors." 20 C.F.R. §§ 404.1527(c)(2)–404.1527(c)(6).

When a conflict exists between medical opinions, the ALJ must resolve it. *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601 (9th Cir. 1999). However, if in resolving inconsistent medical opinions, the ALJ chooses to reject or assign minimal weight to an opinion of a treating or examining physician, the ALJ must articulate "specific and legitimate reasons supported by substantial evidence in the record for doing so." *Lester*,

81 F.3d at 830 (internal quotations and citation omitted). An ALJ satisfies the "substantial evidence" requirement by providing a "detailed and thorough summary of the facts and conflicting clinical evidence, stating his [or her] interpretation thereof, and making findings." *Garrison*, 759 F.3d at 1012. "The opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record." *Thomas*, 278 F.3d at 957. An ALJ may properly reject "the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Thomas*, 278 F.3d at 957; *see Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (affirming rejection of a treating physician's opinion that "was in the form of a checklist, did not have supportive objective evidence, was contradicted by other statements and assessments of [claimant's] medical condition, and was based on [claimant's] subjective descriptions of pain").

      **1.**      **The ALJ Provided Specific and Legitimate Reasons Supported by Substantial Evidence for Assigning Less Weight to the Opinion of Dr. Zoeteman.**

In his assessment, Dr. Zoeteman opined that Plaintiff "could sit, stand, and walk for 30 minutes at one time and sit, stand, and walk for one hour total in an eight-hour day, and that he had other postural and environmental limitations." (Def. Br. at 11.) As noted earlier, the ALJ explained how evidence in the record failed to corroborate Dr. Zoeteman's assessment. For instance, the claimant can "care for himself, perform household chores, attend religious services regularly, drive, use public transportation, and care for his two young children." (R. at 21.) Further, he "swims in the pool 2-3 times per week," "walks as a means of exercise," and "[a]s of 2018, Plaintiff and his family were living in an RV and traveling around the country." (R. at 21.) Instead, the ALJ found "that medical expert Dr. Lee's opinion was more reasonable considering the clinical findings, Plaintiff's reported relief from treatment, and his activities." (Def. Br. at 11.)

It is precisely the ALJ's job to determine the weight to give a medical opinion. Specifically, 20 C.F.R. § 404.1527(c)(4), provides that "consistency . . . with the record as a whole" is a relevant factor for the ALJ to consider in determining how much weight to afford a medical opinion, including that of a treating physician. Additionally, 20 C.F.R. § 404.1527(c)(3) provides that an ALJ may consider how well the opinion is supported:

> The more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight we will give that medical opinion. The better an explanation a source provides for a medical opinion, the more weight we will give that medical opinion.

Thus, the ALJ was free to consider both the extent to which the opinion is consistent with the record "as a whole" and the degree to which it is supported by the record. "The opinions of non-treating or non-examining physicians may … serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record." *Thomas*, 278 F.3d at 957. Dr. Lee asserted Plaintiff "could sit for 4 hours of an 8-hour workday, stand for 2 hours of an 8-hour workday, and walk for 2 hours of an 8-hour workday." (R. at 21.) Dr. Lee's assessment better matched Plaintiff's own description of his daily living activities. Additionally, Dr. Lee opined "an assistive device was not medically necessary." (R. at 21.) This also matched with Plaintiff's statement that he only used a wheelchair for doctor visits. Though the ALJ did not always directly link each piece of cited evidence to a particular statement made by Dr. Zoeteman, the ALJ has nonetheless cited sufficient evidence in the record to enable this Court to reasonably discern her path and meaningfully determine that her conclusions are indeed supported by substantial evidence. In sum, substantial evidence in the record supports the ALJ's rejection of Dr. Zoeteman's assessment.

    **2. The ALJ Provided Legitimate Reasons for Assigning "Little Weight" to the Opinion of Mr. Goldstein.**

The ALJ assigned "little weight" to the opinions offered by Mr. Goldstein. Plaintiff claims Mr. Goldstein's functional capacity evaluation report was discounted because "his

evaluation was performed at the request of Plaintiff's counsel and because he opined on the ultimate issue of whether [Plaintiff] is 'disabled' under the Social Security Act definition." (Pl. Br. at 18.) Based on his observations, Mr. Goldstein concluded, among other things, Plaintiff could "not do any work, including sedentary work on a regular and consistent basis; he is wheelchair-bound, with a wheelchair being medically necessary because he cannot sit or stand for any prolonged time and has severely impaired static and dynamic balance." (Pl. Br. at 19.) The ALJ acknowledged that Mr. Goldstein's opinion was "certainly legitimate and deserve[d] due consideration" but ultimately assigned it little weight because there was ample evidence in the record to discount Mr. Goldstein's opinion. (R. at 23.) The most glaring inconsistency in Mr. Goldstein's opinion was about Plaintiff's wheelchair use. In July 2019, only a few months before Mr. Goldstein's evaluation, Plaintiff informed a provider that "he only used his wheelchair for doctor's appointments," yet Mr. Goldstein asserted Plaintiff was "wheelchair bound." (R. at 19, 21.) Because Mr. Goldstein's evaluation is contrary to other evidence in the record and because Mr. Goldstein's opinion was solicited by Plaintiff's attorney it is reasonable for the ALJ to give it less weight. *Reddick v. Chater*, 157 F.3d 715, 726 (9th Cir. 1998) ("Evidence of the circumstances under which [a] report was obtained and its consistency with other records, reports, or findings could, however, form a legitimate basis for evaluating the reliability of the report."). As previously noted, the extent to which a medical opinion is supported by medical evidence and is consistent with the record as a whole are relevant factors for the ALJ to consider in assigning weight to a medical opinion. Because Mr. Goldstein's opinion was inconsistent with the record and solicited by counsel, the ALJ did not improperly assign little weight to Mr. Goldstein's evaluation. *See id.* at 726.

### C. The ALJ Did Not Err in Assigning Little Weight to the Lay Opinions of Plaintiff's Family

"In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." *Stout v. Comm'r*, 454 F.3d 1050, 1053 (9th Cir. 2006). If an ALJ disregards the testimony of a lay witness, the ALJ must provide

reasons "that are germane to each witness." *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). Further, the reasons "germane to each witness" must be specific. *Stout*, 454 F.3d at 1054. Plaintiff contends that the ALJ improperly rejected the lay opinions of Plaintiff's friends and family members. (Pl. Br. at 20.)

First, an ALJ must consider lay witness testimony even if it is unsupported by the medical evidence. *See, e.g., Smolen v. Chater*, 80 F.3d 1273, 1289 (9th Cir.1996) ("The rejection of the testimony of [the claimant's] family members because [the claimant's] medical records did not corroborate her fatigue and pain violates SSR 88–13, which directs the ALJ to consider the testimony of lay witnesses where the claimant's alleged symptoms are unsupported by her medical records."). Second, a lay witness need not be medically trained to provide testimony about a claimant's ability to work. *See* 20 C.F.R. § 404.1513(d) (providing that lay witness testimony may be introduced "to show the severity of [the claimant's] impairment(s) and how it affects [her] ability to work"); *Dodrill v. Shalala*, 12 F.3d 915, 918–19 (9th Cir.1993) ("[F]riends and family members in a position to observe a claimant's symptoms and daily activities are competent to testify as to her condition."). Finally, the fact that a lay witness may have an abstract pecuniary interest in a claim is not a sufficient reason for an ALJ to discredit his testimony. *Valentine v. Comm'r*, 574 F.3d 685, 694 (9th Cir. 2009) (finding the fact that a claimant's spouse had an "abstract" interest in the outcome of the claim was insufficient to discredit the spouse's testimony).

The ALJ considered the lay opinions of Plaintiff's family members but did not give them "significant weight" because they are "not consistent with the preponderance of the opinions and observations by medical doctors in this case, as well as the course of treatment pursued[,] and the objective findings." (R. at 23.) For example, the family members stated Plaintiff "needed to use a wheelchair and had difficulty ambulating from his vehicle into the house." (R. at 23.) The record demonstrates that Plaintiff only used a wheelchair for doctor appointments. (R. at 21.) The record also demonstrates Plaintiff has ridden and

driven in an RV all across the country. (R. at 21.) The ALJ's reasons for considering lay witness testimony but not assigning it significant weight are valid.

**IT IS THEREFORE ORDERED** affirming the February 5, 2020 decision of Administrative Law Judge Kathleen Mucerino.

**IT IS FURTHER ORDERED** directing the Clerk of Court to enter judgment accordingly and close this matter.

Dated this 22nd day of April, 2022.

Honorable John J. Tuchi
United States District Judge